UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LOIS THOMPSON,<br><br>    Plaintiff,<br><br> v.<br><br>WESTBORO CONDOMINIUM ASSOCIATION,<br><br>    Defendant. | CASE NO. C05-1893JLR<br><br>ORDER |

## I. INTRODUCTION

A 1979 condominium, an electric scooter, and a portable metal ramp have brought the parties to federal court. Defendant Westboro Condominium Association ("Westboro") moves for summary judgment (Dkt. # 12) that federal fair housing laws do not require an access ramp for Plaintiff Lois Thompson's condominium. The court heard oral argument from the parties on August 23, 2006. For the reasons stated below, the court GRANTS in part and DENIES in part Westboro's motion for summary judgment.

## II. BACKGROUND

The Westboro Condominiums were constructed in 1979, and residents began moving in shortly thereafter. The condominiums include 68 dwelling units, comprised of

ORDER – 1

17 separate buildings with four units in each building. Each building has two units on the ground floor and two units on the second floor. Ms. Thompson purchased a ground floor unit at Westboro in 1997. She purchased the unit from a prior owner approximately 18 years after its construction. Ms. Thompson currently resides in her first floor unit. Outside her building, a common area walk with a single step provides access to her home. Since purchasing her home, Ms. Thompson was diagnosed with progressive degenerative arthritis. She experiences severe pain when she attempts to stand or walk, and she has difficulty moving about. In November 2004, Ms. Thompson purchased an electric scooter to aid her mobility.

When Ms. Thompson purchased her scooter, she requested that Westboro construct a concrete ramp to allow her to ride her scooter up the step.[1] The concrete step prevents Ms. Thompson from entering or leaving her home because her scooter is not equipped to ascend stairs. Ms. Thompson cannot walk because of her disabling pain. Without a ramp up the step, Ms. Thompson cannot ride her scooter to her mailbox. It makes it difficult for her to cruise the condominium grounds, and she has difficulty going to the grocery store, taking out the garbage, and going to the doctor. Without a ramp for her scooter, Ms. Thompson is effectively confined to her home. She has fallen several times on the step outside her home when attempting to negotiate the concrete step. Westboro authorized the construction of a ramp, but declined to pay for it.[2]

---

[1] Westboro allegedly constructed a concrete access ramp for a different resident in unit 162A. See Thompson Decl. ¶ 16.

[2] There is conflicting testimony as to what a concrete step would cost. Ms. Thompson's daughter is president of a construction firm which has provided an estimate of $500. See Fraser Decl. at 2. Mr. Schaff and Westboro believe demolition of the existing step and construction of a ramp would cost approximately $2,000. Schaff Decl. ¶ 21. The court notes with some consternation that the attorneys' fees for these motions alone have undoubtedly far exceeded either of these estimates.

ORDER – 2

Faced with the refusal to construct a ramp, Ms. Thompson purchased and installed a $300 portable metal ramp atop the step. See Schaff Decl., Ex. A (photographs of ramp). Westboro almost immediately had safety concerns about the ramp. Mr. Kenneth Schaff, its property manager, concluded that the step created an unreasonable trip and fall hazard. Schaff Decl. ¶ 8. Schaff advised that reflective tape and a "watch your step" stencil would alleviate the hazard. Id. ¶ 13; ex. B (Dec. 23, 2004 Letter to Lois Thompson). Bill Rice, Westboro's groundskeeper, added reflective tape to the step and wrote "watch step" in black marker on the step. Thompson Decl. ¶ 5.

The reflective tape and black marker prevented injury until April 22, 2005, when Westboro changed its mind and advised Ms. Thompson that her ramp needed to be removed within four days for safety reasons. Schaff Decl., Ex. C (April 22, 2005 Letter to Lois Thompson). The letter stated that "[t]he ramp is a safety hazard to any person using that sidewalk and needs to be removed immediately for safety and liability purposes." Id.

In May 2005, Westboro offered to allow Ms. Thompson to use the portable ramp if she removed it after each use. Id. ¶ 17. Unfortunately, the portable ramp weighs far too much to be moved after each use, at least by Ms. Thompson. Thompson Decl. ¶ 10. Indeed, the very purpose of a ramp for a disabled person in an electric mobility scooter is defeated if the person must install a heavy metal ramp before traversing the single step.

On July 1, 2005, Westboro removed Ms. Thompson's "portable" metal ramp.

### III.  ANALYSIS

In examining a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to

ORDER – 3

judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the opposing party must show that there is a genuine issue of fact for trial. Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The opposing party must present significant and probative evidence to support its claim or defense. Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). Where a question presented is purely legal, summary judgment is appropriate without deference to the non-moving party.

    Westboro moves for summary judgment on Ms. Thompson's first cause of action.[3] Ms. Thompson's first cause of action alleges discrimination in violation of the Fair Housing Amendments Act ("FHAA"). 42 U.S.C. § 3601 et seq.

    Under 42 U.S.C. § 3604(f), it is unlawful:

(f)(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—

    (A)    that buyer or renter,

* * *

(3) For purposes of this subsection, discrimination includes—

    (B)    a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling;

42 U.S.C. § 3604. Ms. Thompson claims that Westboro discriminated by making her home unavailable to her and failing to make a reasonable accommodation for her

---

[3] Ms. Thompson's state law causes of action include failure to make a reasonable accommodation in a real estate facility, illegal threats relating to her right to accommodation, and unfair practices in a place of public accommodation, and emotional distress.

ORDER – 4

disability. Ms. Thompson alleges that Westboro improperly refused to construct a concrete ramp or to allow her to leave a portable metal ramp installed on the concrete step in front of her home.

**A.    Westboro did not Make Ms. Thompson's Home Unavailable in Violation of 42 U.S.C. § 3604(f)(1)(A) by Refusing to Construct a Ramp or Allow Installation of a Portable Metal Ramp.**

Ms. Thompson contends that her home has been made "unavailable" to her in violation of 42 U.S.C. § 3604(f)(1)(A) because Westboro will not build her a concrete ramp, or allow her to install her own portable metal ramp. Westboro argues that § 3604(f)(1)(A) does not require it to update its grounds to be handicap accessible. Westboro also argues that Ms. Thompson's home is not "unavailable" to her because she lives in the home.

Section 3604(f)(1)(A) relates to the sale, rental, or availability of a dwelling unit. Ms. Thompson's residence is not unavailable to her if she lives there. The court recognizes with sympathy the pain and inconvenience that Ms. Thompson experiences when she attempts to access her unit. However, the step on the walk in front of her unit does not make the unit "unavailable," at least for purposes of 42 U.S.C. § 3604(f)(1). Ms. Thompson cites no cases in support of her position that § 3604(f) requires new construction by Westboro. The court is aware of no authority supporting such a conclusion. See Rodriguez v. 551 W. 157th St. Owners Corp., 992 F. Supp. 385, 387 (S.D.N.Y. 1998) ("[P]laintiffs cite no case, and the Court is aware of none, interpreting section 3604(f) to require a landlord to undertake wholly new construction.").[4] The court must conclude that Westboro does not make Ms. Thompson's condominium "unavailable" to her by refusing to allow her to install her portable metal ramp, or by

---

[4] The court does not address the cost of the ramp, because the FHAA does not impose a duty on Westboro to undertake new construction to address Ms. Thompson's disability.

ORDER – 5

refusing to construct a concrete ramp. Ms. Thompson's claim pursuant to 42 U.S.C. § 3604(f)(1)(A) is therefore dismissed.

**B.     Westboro did not Fail to Make a Reasonable Accommodation in Violation of 42 U.S.C. § 3604(f)(3)(B) by Refusing to Pay for a Ramp Improvement.**

Ms. Thompson contends that her enjoyment of her home is not equal to the enjoyment of other residents who do not "confront architectural barriers" on the way to their homes, because of the concrete step. Pl.'s Opp. at 12. Ms. Thompson alleges that the failure to construct a ramp is a failure to make a reasonable accommodation in "rules, policies, practices, or services" when necessary to afford "equal opportunity to use and enjoy a dwelling," in violation of § 3604(f)(3)(B). Id.

Westboro contends that the FHAA does not require that a landlord make capital improvements to address the requirements of disabled tenants. In support of this position, Westboro relies on the previous section, which provides that it is discrimination to "refus[e] to permit, *at the expense of the handicapped person*, reasonable modifications of existing premises." 42 U.S.C. § 3604(f)(3)(A) (emphasis added). Westboro argues that it is willing to allow Ms. Thompson to modify the premises – it is just not willing to pay for the modifications.

Ms. Thompson urges that landlords have an affirmative duty to reasonably accommodate tenants with disabilities, even if the reasonable accommodation involves a financial burden. See United States v. Cal. Mobile Home Park Mgmt. Co., 29 F.3d 1413, 1416 (9th Cir. 1994). However, the facts of California Mobile Home are quite different. In California Mobile Home, the plaintiff's infant daughter had a respiratory disease which required home health care. The landlord imposed its standard "guest fees" on the infant daughter's home health care aide, and refused to waive the fees in spite of the disability.

ORDER – 6

The Ninth Circuit found this improper under the FHAA because it affected the disabled residents in a disparate manner:

> Although defendants argue that any fee which is generally applicable to all residents of a housing community cannot be discriminatory, the Act itself is concerned with facially neutral rules of all types. Congress recognized that "another method of making housing unavailable to people with disabilities has been the application or enforcement of otherwise neutral rules and regulations on health, safety and land-use in a manner which discriminates against people with disabilities. . . . These and similar practices would be prohibited." H.R. Rep. No. 100-711, at 24, reprinted in 1988 U.S.C.C.A.N. at 2185. See also United States v. Village of Marshall, Wis., 787 F. Supp. 872, 879 (W.D. Wis. 1991) ("strict adherence to a *rule* which has the effect of precluding handicapped individuals from residing in the residence was precisely the type of conduct which the Fair Housing Amendment Act sought to overcome with the enactment of § 3604(f)(3)(B)").

Id. at 1417 (emphasis added). The plain language of § 3604(f)(3)(B) excludes construction or improvements as a "reasonable accommodation." "[D]iscrimination includes . . . a refusal to make reasonable accommodations *in rules, policies, practices, or services* . . . ." 42 U.S.C. § 3604(f)(3)(B) (emphasis added). There is no mention of "construction" or "facility" improvements. Failing to construct a ramp is not a failure to accommodate in a rule, policy, practice, or service. Rodriguez, 992 F. Supp. at 387 ("To undertake to construct an entirely new facility in an existing building does not, under these circumstances, qualify as an 'accommodation' of a 'rule, policy, practice or service,' when the term 'construction' is nowhere to be found and the term 'facility' is excluded.")

A landlord is required to make a reasonable accommodation in rules and policies, but nothing in § 3604(f) requires wholly new construction as an accommodation for a disabled resident. Id. The court finds that as a matter of law § 3604(f)(3)(B) does not require construction of a concrete ramp for Ms. Thompson.

ORDER – 7

C.  **Material Questions of Fact Preclude Summary Judgment on Whether Westboro Failed to Make a Reasonable Accommodation in Violation of 42 U.S.C. § 3604(f)(3)(B) by Failing to Allow Ms. Thompson to Install her Portable Metal Ramp.**

Ms. Thompson claims that Westboro violated 42 U.S.C. § 3604(f)(3)(B) by failing to make a reasonable accommodation in its rules when it refused to allow her to leave her portable metal ramp installed (folded up) on the step outside her unit. See Schaff Decl., Ex. A (photographs of ramp). The court finds this claim is properly cognizable under § 3604(f)(3)(B) because it implicates a rule or policy of the condominium association.

Ms. Thompson alleges that she is seeking a reasonable accommodation in Westboro's rules, permitting her to leave her portable ramp installed on the step outside her unit. Ms. Thomson alleges that it would be a reasonable accommodation to allow her to leave her portable metal ramp installed, and partially folded while not in use. If Ms. Thompson is unable to leave her ramp on the step she is precluded from using the ramp altogether: the same arthritis that precludes her from walking precludes her from hauling a heavy portable metal ramp in and out of her house. See Thompson Decl. ¶ 10.

Westboro argues that allowing Ms. Thompson to leave her ramp installed gives her "preferential treatment," and exposes the non-handicapped to an unreasonable risk of injury. Westboro argues that the portable ramp is not safe when left on the step. However, Westboro provides no factual support for its contentions, and no basis for reversing its position that reflective tape and a "watch step" marking were sufficient to ensure residents' safety. There is no testimony from a professional engineer or expert about what a "safe" ramp would actually look like, or why Ms. Thompson's ramp is not "safe." There is no testimony from any other experts about why Ms. Thompson's ramp is unsafe. Mr. Schaff might be qualified as an expert in condominium administration and safety, if Westboro had designated him as such. However, the record does not indicate

ORDER – 8

that Westboro has sought to rely on Mr. Schaff as an expert. Even if it had, his conflicting representations to Ms. Thompson would not permit summary judgment. The record indicates that the parties once believed that reflective tape and black marker made Ms. Thompson's ramp a safe fixture. Now Westboro backs away from its earlier position and asserts the ramp is a danger. There is no testimony or evidence regarding injuries, slips, falls, or hazardous encounters with Ms. Thompson's portable metal ramp.

In spite of the complete lack of evidence regarding injuries from Ms. Thompson's ramp, there is strong evidence that Westboro's actions cause Ms. Thompson pain and suffering every day. Without her ramp, Ms. Thompson is confined to her home. A reasonable juror might conclude that the portable metal ramp is safe, and that Westboro failed to make a reasonable accommodation by allowing Ms. Thompson to keep her portable ramp on the step. A reasonable juror might conclude that Ms Thompson has suffered substantial emotional distress as a result of Westboro's actions, and is entitled to install her step outside her home. Genuine issues of material fact preclude summary judgment on the question of reasonable accommodation, and the court DENIES Westboro's motion for summary judgment.

**D.     The Court Retains Jurisdiction over Ms. Thompson's State Law Claims.**

Having concluded that summary judgment is inappropriate on one federal claim, the court declines to dismiss Ms. Thompson's remaining state law claims.[5]

---

[5] The court notes for the record Westboro's incorrect assertion that 28 U.S.C. § 1367(c)(3) only applies if the court retains original jurisdiction. See Def.'s Reply at 5. Westboro contends that the court must dismiss Ms. Thompson's state law claims if Ms. Thompson's federal claims under the FHAA are dismissed. This is incorrect. The district court in its discretion may exercise supplemental jurisdiction even if it has dismissed all claims over which it had original jurisdiction. See Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maint., Inc., 333 F.3d 923, 925 (9th Cir. 2003); see also 28 U.S.C. § 1367(c)(3).

ORDER – 9

### IV.  CONCLUSION

For the reasons stated in this order, the court GRANTS in part and DENIES in part Westboro's motion for summary judgment (Dkt. # 12).

Dated this 25th day of August, 2006.

JAMES L. ROBART
United States District Judge

ORDER – 10